## <u>AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT</u>

I, Kevin Barbosa, being sworn, state as follows:

## <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      For the past twelve years, I have been employed as a police officer by the city of New Bedford, Massachusetts.  For the past three years, I have been assigned to the Drug Enforcement Administration ("DEA") as a Task Force Officer ("TFO").  Prior to being assigned as a TFO to the DEA, I was assigned to the New Bedford Police Organized Crime Intelligence Bureau for over six years.

2.      As a DEA TFO, I am authorized to investigate violations of the laws of the United States, including violations of drug, firearms, and money laundering laws listed in the United States Code.  I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

3.      During my career, I have received extensive specialized training in the field of controlled substance identification, investigation, and enforcement.  For example, I participated in a 21-week training with the State Police Municipal Academy.  I have also attended training courses on search and seizure, advanced tactics for patrol, a 20-hour drug investigation course, an 8-hour South Coast Anti-Crime Task Force Drug Enforcement Seminar, an 8-hour course on field testing drugs, and various other formal and informal trainings.

4.      During my career, I have participated in all aspects of criminal investigations, including conducting surveillance and undercover operations, executing searches pursuant to court-ordered search warrants, and executing arrests.  I have written and/or participated in the execution of numerous search warrants resulting in the seizure of large quantities of controlled

1

substances and paraphernalia involved in the manufacture and distribution of controlled substances, United States currency, records of narcotics and monetary transactions, drug customer lists, and other documents relating to the manufacturing, transportation, ordering, purchasing, and distribution of controlled substances, as well as the collection, expenditure, accounting, transportation, and laundering of drug proceeds.  I have participated in the interviews of numerous defendants and witnesses regarding large-scale narcotics trafficking.  I have also participated in various wiretap investigations of individuals involved in significant criminal activity.

5.     I have participated in numerous investigations into individuals involved in the possession or distribution of controlled substances.  In addition, I have also participated in numerous investigations into individuals involved in related crimes often committed by drug traffickers, including money laundering and the possession or trafficking of firearms.

6.     Based on my training and experience, I am familiar with various types of controlled substances, the associated paraphernalia, the prices of various substances, and the common terminology used to refer to these substances.  I am also familiar with narcotics traffickers' methods of operation, including methods used by them to distribute, store, transport, and sell narcotics, as well as methods used to collect, expend, account for, transport, and launder drug proceeds.

7.     I am familiar with the facts and circumstances of the investigation described herein based on my personal participation in this investigation.  I make this affidavit based upon personal knowledge derived from my participation in this investigation and upon information (whether received directly or indirectly) that I believe to be reliable from numerous sources, including information from: federal, state, and local law enforcement partners; physical surveillance; public records; witness interviews; and queries of law enforcement records.

## PURPOSE OF THE AFFIDAVIT

8.      I submit this affidavit in support of an application for a criminal complaint charging Marcos Diaz ("DIAZ") and Nathan Bradley Ferguson ("BRADLEY") with possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1).

9.      As summarized below, a search of the residence where DIAZ and BRADLEY both resided resulted in the seizure of multiple types and significant quantities of controlled substances under circumstances that give probable cause to believe that both DIAZ and BRADLEY possessed controlled substances with the intent to distribute them.

## PROBABLE CAUSE

10.      On October 1, 2024, the Hon. M. Page Kelley, United States Magistrate Judge, District of Massachusetts, authorized a warrant allowing law enforcement to search the premises located at 785 Tarkiln Hill Road, New Bedford, Massachusetts ("Target Premises").  *See* 24-6824-MPK (under seal).  The warrant authorized law enforcement to seize, among other things, any evidence, fruits, and instrumentalities of violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute or distribution of controlled substances) and 21 U.S.C. § 846 (conspiracy to commit the same).

11.      On the morning of October 2, 2024, law enforcement agents executed the warrant for the Target Premises.  After agents knocked and announced their presence, they entered the Target Premises.  Upon entry, agents first encountered BRADLEY, who was in the living room on the first floor where a bed was also located.  As investigators continued their search and made their way to the stairwell, they encountered DIAZ at the top of the stairs coming out of a bedroom on the second floor.

12.     Based on the search of the Target Premises and the observations of investigators during the search, both DIAZ and BRADLEY lived at the Target Premises.  Based on the evidence found in each room, as summarized below, BRADLEY primarily resided in the living room on the first floor, while DIAZ primarily resided in the bedroom on the second floor.

13.     In the living room on the first floor, investigators found evidence indicating that BRADLEY lived and slept in this room.  Among other things, investigators found mail in this room addressed to "Nathan Bradley Ferguson" at "785 Tarkiln Hill Rd, New Bedford, MA 02745." There was also a bed in the living room, with a phone connected to a charger next to it.  Further, at the scene, BRADLEY admitted to living in this room.

14.     In the living room, near other items indicative of BRADLEY's use and possession of this room, investigators found a locked barber case (*i.e.*, a case normally used to store hair clippers and tools used by barbers).  Inside of the barber case, investigators located the following: (a) a plastic bag containing orange pills, weighing approximately 123.1 grams, that later tested presumptively positive for methamphetamine; (b) two plastic bags containing a white powder, weighing approximately 104.4 grams, that later tested presumptively positive for cocaine; and (c) three plastic bags weighing approximately  70.8 grams that contained blue circular pills imprinted with "M" and "30," which are the markings on real 30-milligram oxycodone pills, but that, based on my training, experience, and knowledge of this investigation, and the appearance of the pills, I believe are counterfeit pills that contain fentanyl.[1]  A picture of the seized items is included below:

_____

[1]     The approximate weights of the narcotics recovered from the Target Premises included herein are inclusive of packaging.



15.     As investigators continued their search of the living room, they located a plastic bag containing more blue M30 pills, weighing approximately 35.3 grams in the top drawer of a TV nightstand, that based on my training, experience, and knowledge of this investigation, as well as the appearance of the pills, I believe to contain fentanyl.

16.     Upstairs in the hallway of the Target Premises, investigators located a bag containing a powder, weighing approximately 19.3 grams, that tested presumptively positive for fentanyl.

17.     In the bedroom on the second floor, investigators found evidence indicating that DIAZ lived and slept in this room.  Among other items indicative of DIAZ living in this room, investigators found his driver's license, a Mass Health card in his name, a debit card in his name, and a credit card in his name.  Further, at the scene, DIAZ admitted to investigators that he lived in this room and any items that would be found in this room were his.

18.     In the bedroom on the second floor, investigators found a Smith & Wesson firearm bearing serial number A188017 with four rounds of ammunition in the magazine under a futon-style bed in the room.  A box containing an additional 45 rounds of ammunition was located nearby.  Under the futon in the bedroom (*i.e.*, in the same location as the firearm) investigators also found a plastic bag of pills, weighing approximately 88.9 grams, that later tested presumptively positive for methamphetamine.

19.     Although investigators located certain evidence indicating that DIAZ and BRADLEY were drug users themselves (e.g., drug residue on a table and around the house indicative of personal drug use), based on my training, experience, and knowledge of this investigation, the quantities of drugs found in the Target Premises, as well as the variety and packaging of the drugs, show that DIAZ and BRADLEY each possessed drugs with the intent to distribute them.

20.     Specifically, I believe that the approximately 200 grams or more of methamphetamine, approximately 104.4 grams of cocaine, and approximately 70.8 grams of fentanyl seized from the Target Premises are distribution quantities of methamphetamine, cocaine, and fentanyl, and are not quantities intended for personal use.  Further, other evidence associated with drug distribution was seized from the Target Premises during the execution of the search warrant, including digital scales (used by drug dealers to weigh drugs for distribution), cut bags (used by drug dealers to package drugs for distribution), blenders (used to mix narcotics), and cutting agents (used by drug dealers to dilute drugs before distribution to increase profits).

21.     Based on the large quantities of drugs found at the Target Premises, the fact that drugs were found in the living room, hallway, and bedroom, and other observations made by investigators during the search, including that some of the scales, cut bags, and blenders were

located in the living room area where both parties clearly had access, I believe that there is probable cause to believe that DIAZ and BRADLEY possessed controlled substances with the intent to distribute.

## CONCLUSION

22.     Based on the evidence set forth above, as well as my training, experience, and knowledge of this investigation, I submit that there is probable cause to charge DIAZ and BRADLEY in a Criminal Complaint with possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1).

I, Kevin Barbosa, hereby state under penalty of perjury that the contents of this affidavit are true and correct to the best of my knowledge, information, and belief.

Respectfully submitted,

KEVIN BARBOSA
Task Force Officer, DEA

Sworn before me by telephone in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 on October 7, 2024.

HON. JENNIFER C. BOAL
United States Magistrate Judge
District of Massachusetts